UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK TED SPENCER,

            Petitioner,               Case No. 09-13362

v.                                Honorable Patrick J. Duggan

DEBRA SCUTT,

            Respondent.

_____/

**<u>OPINION GRANTING PETITIONER'S MOTION TO SET BAIL</u>**

     Petitioner Frederick Spencer ("Petitioner") is serving a life sentence for felony murder and a two to ten year sentence for arson of a dwelling house and preparation to burn property over $20,000 in connection with a fire at his home in Shepherd, Michigan on January 30, 2000.  On March 3, 2006, a jury convicted Petitioner of starting this fire, which caused the death of Petitioner's then-girlfriend, Kathy Sytek.

     In 2009, after exhausting state remedies, Petitioner sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Petitioner raised a single claim of ineffective assistance of trial counsel based on his trial counsel's failure to move to exclude statements Petitioner made to state arson investigator while in the

hospital recovering from severe injuries sustained in the January fire.[1]  On

February 6, 2013, this Court granted Petitioner a conditional writ of habeas corpus,

ordering that the State retry Petitioner within 120 days or release him from prison.

Feb. 6, 2013 Op. & Order (ECF No. 17).[2]  In granting this relief, the Court

determined that the hospital bed statements should have been excluded as

involuntary, that Petitioner's trial counsel failed to file a suppression motion

because he misunderstood the applicable law,[3] that a motion to suppress would

---

[1] At the time of the two separate interviews, Petitioner was not only seriously wounded but was on what can only be described as a cocktail of potent painkillers and anti-psychotic drugs.  Petitioner never received *Miranda* warnings nor was he aware that he was a suspect in the investigator's mind until late in the second interview.  For a discussion of the circumstances surrounding the interview sessions, *see* Feb. 6, 2013 Op. & Order 25-27 (ECF No. 17).

[2] The Court cites to the Opinion and Order on the Court's Electronic Case Filing system.  The unpublished Opinion and Order is also accessible on LexisNexis and Westlaw.  *See Spencer v. Stutt*, No. 09-13362, 2013 WL 451156, 2013 U.S. Dist. LEXIS 15782 (E.D. Mich. Feb. 6, 2013) (unpublished).

[3] Counsel indicated that he did not believe the statements could be excluded as involuntary because "there were no admissions, there was no statement at all that would amount to anything like a confession, not even an acknowledgement that there was a motive."  Feb. 6, 2013 Op. & Order 14 (ECF No. 17) (citation omitted).  Interestingly, the Michigan Court of Appeals similarly misapprehended federal law.  In affirming the trial court's denial of Petitioner's post-verdict motions, which argued ineffective assistance of counsel amongst other things, the Michigan Court of Appeals held that the admission of a defendant's involuntary statements cannot violate the United States Constitution where the defendant did not directly confess to the offense charged.  *Id.* at 11.  This holding was contrary to Supreme Court precedent.  *Id.* at 11-12.

have succeeded, and that Petitioner suffered prejudice as a result of his counsel's inaction.  *Id.*

On March 5, 2013, Respondent filed a motion for immediate consideration and motion to stay the Court's February 6, 2013 judgment pending appeal.  (ECF No. 23.)  Petitioner responded on March 12, 2013.  (ECF No. 24.)  On March 22, 2013, the Court issued an Order granting Respondent's motion in part.  (ECF No. 25.)  Specifically, the Court granted a stay with respect to its order that Petitioner be released from custody unless the State brings him to trial within 180 days. Although Respondent made arguments pertaining to Petitioner's entitlement to release pending appeal, the Court deemed it prudent to abstain from addressing any arguments regarding release unless and until Petitioner filed a motion seeking release.

On April 22, 2013, Petitioner filed a motion to set bail which is presently before the Court.  (ECF No. 26.)  Respondent did not respond to this motion.  For the reasons set forth more fully below, the Court grants Petitioner's Motion to Set Bail.

## I.    Legal Standard

Federal Rule of Appellate Procedure 23(c)[4] provides that when a decision ordering the release of a prisoner is on appeal, the prisoner must be released unless

---

[4] The Rule provides:

a court orders otherwise.  While this rule undoubtedly creates "a presumption of

release pending appeal where a petitioner has been granted habeas relief," the

presumption can be overcome if the traditional stay factors tip the balance against

it.  *O'Brien v. O'Laughlin*, 130 S. Ct. 5, 6 (2009).  In deciding whether to stay an

order granting habeas corpus relief pending appeal,[5] courts should consider the

following factors:

(1) Whether the stay applicant has made a strong showing that he is likely to
succeed on the merits;

---

> While a decision ordering  the release of a prisoner is under review,
> the prisoner must—unless the court or judge ordering the decision, or
> the court of appeals, or the Supreme Court, or a judge or justice of
> either court orders otherwise—be released on personal recognizance,
> with or without surety.

Fed. R. App. P. 23(c).  This rule implicitly recognizes that district courts maintain
jurisdiction while a matter is pending appeal to enter a stay or set bail.

[5] These factors also apply in determining whether to release a petitioner
pending appeal.  In the instant case, the Court has already stayed its Order
requiring Respondent to retry Petitioner within 120 days.  This Opinion and Order
focuses on whether, in spite of the issuance of that stay, Petitioner should be
released pending the Sixth Circuit's resolution of his habeas petition.  The Court
believes that this bifurcated approach is warranted given that Petitioner had not yet
sought release at the time Respondent filed its motion for immediate consideration
and motion for stay pending appeal and the Court, therefore, explicitly declined to
address any arguments regarding release.  Moreover, Petitioner should not be
penalized for not opposing Respondent's request for a stay of a retrial as "it would
be a waste of judicial resources for the appeal to proceed in the Sixth Circuit Court
of Appeals, while simultaneously requiring the State to grant relief to Petitioner."
*Williams v. Booker*, 715 F. Supp. 2d 756, 770 (E.D. Mich. 2010); *rev'd on other
grds*, 454 F. App'x 475 (6th Cir. Jan. 5, 2012).

4

(2) Whether the applicant will be irreparably harmed absent a stay;[6]

(3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) Where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119 (1987) (citations omitted).

"Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Id.* at 777, 107 S. Ct. at 2119. The balance of factors relevant to determining whether a successful habeas petitioner should be released pending appeal may depend to a large extent upon a determination of the state's prospects of success on appeal. *Id.* at 778, 107 S. Ct. at 2120. Where the state fails to show either that it has a strong likelihood of success on appeal or can demonstrate a substantial case on the merits, the preference for release of the petitioner should control. *Id.*

## II.    Application

## A.    Has Respondent Established a Strong Likelihood of Success on Appeal or Demonstrated a Substantial Case on the Merits?

---

[6] The Court's analysis of irreparable harm to the State embraces the factors germane to bail consideration – specifically, the risk of flight and the risk of danger posed to the public if released – as well as the "State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal[.]" *Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S. Ct. 2113, 2119-20 (1987); *see also Drain v. Woods*, No. 10-11306, 2013 U.S. Dist. LEXIS 76837 (E.D. Mich. May 31, 2013) (Tarnow, J.).

Respondent argues that the State is likely to succeed on appeal or, at the very least, has demonstrated that the State's prospects of success on appeal are substantial.  (Resp't's Br. 6, ECF No. 23.)  As support for this contention, Respondent makes the following arguments: (1) Petitioner's trial counsel – the former prosecuting attorney for Isabella County – made a strategic decision to allow Petitioner's statements to come into evidence, (*id.* at 9-11); (2) this decision was within the wide range of professionally competent assistance of counsel, (*id.* at 12-14); (3) the Court erred in reviewing the *Strickland* prejudice prong *de novo* because even though the state courts disposed of Petitioner's ineffective assistance claim on the performance prong, both prongs are to receive AEDPA deference, (*id.* at 14-15); (4)  the Court erred in analyzing the two interview sessions together to determine whether they were voluntary and instead should have analyzed them separately, (*id.* at 15-17); and (5) the evidence against Petitioner was strong even without the hospital statements and the admission of those statements was not likely to affect the outcome of the trial (*id.* at 17-18).  Each argument is analyzed briefly below.

Respondent's first argument seems to suggest that Petitioner's counsel's experience militates against a finding of deficient performance.  The Court disagrees as deficient performance is analyzed under an objective standard. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2053, 2064 (1984)

(explaining that deficient performance requires a showing "that counsel's representation fell below an objective standard of reasonableness[]").  Because the standard is an objective one, counsel's experience does not preclude an ineffective assistance of counsel claim.  Respondent's remaining contentions were otherwise addressed and rejected by this Court in its decision granting a conditional writ. Feb. 6, 2013 Op. & Order 14-16.

Respondent's second *Strickland* argument suggests that the Court examined counsel's conduct retrospectively by examining the impact of the statements on the outcome of Petitioner's trial.  An analysis of the Court's Opinion and Order, however, shows that the Court focused primarily on what a reasonable attorney would have done with respect to seeking suppression before trial as opposed to assessing the damage that was done at trial.   Even without assessing State's reliance on the statements, no reasonably competent attorney would have failed to seek suppression.  In sum, the Court properly assessed counsel's conduct and measured this conduct in light of prevailing professional norms as set forth in the ABA standards for defense counsel.  (*Id.* at 17-19.)

In the third argument, Respondent contends that although the Court was bound by *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012), it improperly reviewed the prejudice prong *de novo*.  Noting that "[t]he proper standard of review may well make a difference in the outcome of the State's appeal[,]"

Respondent points out that the State of Michigan filed a petition for writ of certiorari with the Supreme Court asking the Court to decide whether the unadjudicated *Strickland* prong is entitled to AEDPA deference.  (Resp't's Br. 15 (citing *Wolfenbarger v. Foster*, No. 12-420, challenging the Sixth Circuit's decision at 687 F.3d 702 (6th Cir. 2012).)  While it is true that "[i]f the State does not prevail on the deficient-performance prong, then the success of the appeal will hang on the prejudice prong[,]" (*id.*), the Court notes that the Supreme Court denied the aforementioned writ of certiorari on March 18, 2013, 133 S. Ct. 1580. Thus, the authority cited by the Court providing that the prejudice prong should be reviewed *de novo* remains good law and Respondent has not raised a substantial question on the merits.

Respondent's fourth argument is that the Court did not analyze the two hospital interviews separately[7] and it should have because the state court would have considered the interviews separately in reaching a decision as to exclusion. While the Court does not believe this was in error, even if the Court should have analyzed the interviews separately, part of the reason the statements were so damaging is because inconsistencies in Petitioner's version of events aligned with the prosecution's theme that Petitioner was lying and implicated Petitioner in the

---

[7] Although the Court described the factual circumstances of the interviews separately, it did not conduct a separate voluntariness analysis for each interview. Feb. 6, 2013 Op. & Order 25-36.  The Court did, however, make specific references to the problematic aspects of each interview.  *Id.*

commission of the crimes.  Feb. 6, 2013 Op. & Order 38.  Thus, even if the State had been deprived of only the second (and far more accusatory) interview session at trial, counsel's failure to seek exclusion of this interview was deficient and prejudiced Petitioner.

Lastly, Respondent contends that the evidence against Petitioner was strong even without the statements.[8]  Respondent takes the position that the evidence that the fires were deliberately set was strong; however, the defense presented an equally plausible theory of how the fires started and effectively rebutted many of the State's arguments at trial.  *Id.* at 37 (discussing examples of rebutted evidence).

In this Court's opinion, Respondent has demonstrated neither a "strong likelihood of success on appeal" nor a "substantial case on the merits."  *Hilton*, 481 U.S. at 778, 107 S. Ct. at 2120.  "Where the State's showing on the merits falls below this level, the preference for release should control."  *Id.*

**B.    Will Respondent be Irreparably Harmed if Petitioner is Released?**

The Court considers the traditional bail considerations of (1) likelihood of flight and (2) dangerousness are considered here.  *Hilton*, 481 U.S. at 777, 107 S. Ct. at 2119-20.

---

[8] Respondent points out that the Court's description of the statements as "direct evidence" is erroneous because Petitioner never admitted to committing the crime.  (Resp't's Br. 18.)  Whether the evidence was circumstantial or direct, the effect of the statements was the same and it cannot be seriously contended that a defendant's own statements implicating him in the death of his girlfriend would not be damaging to the defense.

9

### 1.     Is Petitioner a Flight Risk?

Respondent presents a few arguments suggesting that Petitioner is a flight risk. First, the penalty for first-degree murder, which includes felony murder, is life in prison without the possibility of parole, rendering Petitioner more likely to flee. *See* Mich. Comp. Laws § 750.316. It is true that Petitioner remains charged with first-degree felony murder and that the State has unequivocally expressed an intent to retry Petitioner even if this Court's decision is affirmed on appeal. (Resp't's Br. 19.)

The State insinuates that Petitioner is a flight risk because after being charged with the crimes of which he was eventually convicted, he was apprehended in North Carolina. (*Id.*) Petitioner concedes that he "moved to North Carolina between 2000 (when the fire occurred) and 2006 (when he was brought to trial), [but argues that] it would be patently false to say he had fled the [S]tate of Michigan." (Pet. Br. 12.) The fact that Petitioner "went to live with his son after the traumatic loss of his fiancé and his childhood home is completely understandable." (*Id.*) Given the span of several years between the fire and the initiation of criminal charges, the Court does not believe Petitioner's relocation was an effort to evade law enforcement.

In arguing that Petitioner does not pose a risk of flight, counsel indicates that Spencer grew up in Michigan and that his entire family – with the exception of his

10

son – resides in Michigan. (Pet. Br. 11.) This suggests Petitioner has strong community ties. Moreover, Petitioner's sister Coreen submitted an affidavit indicating that, if released, Petitioner would reside with her and her husband in Okemos, Michigan and that Petitioner would not be provided with a vehicle. (*Id.*; *see also id.*, Coreen Spencer Aff., Ex. A.) Lastly, Petitioner's health problems make him less of a flight risk as he plans to undergo surgery for tumors in his left lung should he be released. (*Id.* (see *infra* for further discussion on Petitioner's health).)

In sum, while the Court agrees with the State's position that those facing life imprisonment are more likely to flee than those facing lesser sentences, the Court does not find the State's other arguments persuasive and believes that Petitioner's strong community ties in Michigan diminishes the weight of the State's one persuasive argument.

**2.      *Does Petitioner Pose a Threat of Danger to the Community if Released?***

The Court does not believe Petitioner poses a threat of danger to the community and is confident that the conditions imposed upon his release will further ensure the public's safety. Petitioner is seriously ill and requires medical treatment. Petitioner underwent treatment for lung cancer in 2011 and doctors recently discovered two new tumors in his left lung. (Pet. Br. 10.) His treating physicians have recommended a "wedge resection or partial lobectomy on his left

11

lung." (*Id.* (citing Dr. Report, Ex. B).)  Additionally, Petitioner is blind in one eye and has a club foot.  (*Id.* at 9-11.)

Further evidencing Petitioner's lack of dangerousness is the fact that he has not committed any violent acts during his seven-year incarceration.  (*Id.* at 12 (citing various prison reports, Ex. C).)  Petitioner has a relatively blemish-free prison record – the misconducts in his prison records are (1) for being out of place (not in school when he was supposed to be in school) and (2) for failing to tuck in his shirt.  (Prison reports, Pet.'s Br. Ex. C.)  Petitioner has spent his prison time productively, working when his health so permitted and attending class. (*Id.*)

C.     **Will Petitioner be Substantially Injured if Not Released?**

The Court must consider whether continued confinement will substantially injure Petitioner.  "The interest of the habeas petitioner in release pending appeal, [is] always substantial," *Hilton*, 481 U.S. at 777, 107 S. Ct. at 2120, because remedying a prisoner's confinement in violation of the Constitution "is the very essence of the writ of habeas corpus[,]" *Burdine v. Johnson*, 87 F. Supp. 2d 711, 717 (S.D. Tex. 2000).  Sixth Circuit case law holds that continued imprisonment in violation of the United States Constitution constitutes substantial harm. *See Newman v. Metrish*, 300 F. App'x 342, 344 (6th Cir. 2008) (unpublished) ("[the petitioner] suffered a continuing injury while incarcerated"); *see also Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 778 (E.D. Mich. 2004) ("A petitioner suffers

12

irreparable harm each day the petitioner remains imprisoned in violation of the United States Constitution.").

Respondent argues that continued detention pending appeal will not harm Petitioner because the State intends to retry him should the Sixth Circuit affirm this Court's Opinion and Order conditionally granting the writ of habeas corpus. (Resp't's Br. 19.) Because, according to Respondent, the Court granted habeas relief on grounds unrelated to Petitioner's "factual (as opposed to legal) guilt of the crime of murder[,]" (*id.*), he will not suffer harm from remaining in prison.

The Court is not persuaded by Respondent's argument. By finding that Petitioner was denied his Sixth Amendment right to the effective assistance of counsel at trial, the Court has already determined that a reasonable probability exists that the result of a retrial will be more favorable to Petitioner. Feb. 6, 2013 Op. & Order 39-40. This is because in evaluating prejudice to a defendant in an ineffective assistance of counsel claim, a reviewing court must take "into account the totality of the circumstances, as well as the relative strength of the case proffered by the prosecution." *Foster v. Wolfenbarger*, 687 F.3d 702, 709 (6th Cir. 2012) (citation omitted). Because the evidence against Petitioner was far from overwhelming absent his unconstitutionally obtained hospital-bed statements, Respondent has failed to demonstrate that Petitioner will not be substantially injured by continued detention pending appellate review.

13

In sum, Petitioner would be injured by his continued confinement pursuant to a constitutionally infirm conviction.

**D.      Where Does the Public Interest Lie?**

The fourth *Hilton* factor requires consideration of where the public interest lies.  Without a doubt, the State has "a strong interest in enforcing its criminal judgments and in defending the integrity of its judicial system."  *Miller v. Stovall*, 641 F. Supp. 2d 657, 670 (E.D. Mich. 2009) (citations omitted).  "At the same time, however, the public also has a compelling interest in the State not continuing to incarcerate individuals who have not been accorded their constitutional right to a fair trial. Citizens will not have confidence in the criminal justice system unless they are convinced that the system is compliant with constitutional norms. The federal writ of habeas corpus monitors the State's compliance with constitutional law; this, in turn, inspires the public's confidence in the criminal justice system." *Id.* (citation omitted).

Respondent asserts that "Michigan law specifically prohibits bail for a person charged with murder." (Resp't's Br. 20 (citation omitted).  However, there is no such blanket prohibition in the law.  *See* Mich. Const. art. 1, § 15(b) (denying bail "where proof is evidence or the presumption great" to all "persons . . . indicted for, or arraigned on a warrant charging, murder or treason"); Mich. Comp. Laws §

765.5 (stating that "no person charged with treason or murder shall be admitted to bail if the proof of his guilt is evident or the presumption great").

### III.    Conclusion

Upon thorough examination, the Court concludes that Petitioner should be granted bond pending Appeal.  This conclusion rests on Respondent's failure to make a sufficiently strong showing that she is likely to succeed on appeal.  Due to this failure, Petitioner is entitled to the presumption of release embodied in Federal Rule of Appellate Procedure 23(c) even if some of the stay factors weigh in Respondent's favor.

An Order consistent with this Opinion will issue.


Date:  September 25, 2013

                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE

Copies to:

**David A. Moran**
**Imran J. Syed**
**Sarah C. Zearfoss**
**Linus R. Banghart-Linn**